UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MARISSA DANIELLE KELLY, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 3:23-CV-222-JEM |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 8]. Now before the Court is Plaintiff's Motion for Judgment Based on the Administration Record [Doc. 11]. Marissa Danielle Kelly ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Commissioner of Social Security ("Commissioner"). For the reasons set forth below, the Court will **DENY** Plaintiff's motion [Doc. 11] and will **AFFIRM** the decision of the Commissioner.

I. **PROCEDURAL HISTORY**

On February 4, 2021, Plaintiff filed for Disability Insurance Benefits [Tr. 209–11] pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* Plaintiff claimed a period of disability that began on February 1, 2017 [*Id.* at 209]. After her claim was denied initially [*id.* at 56–65] and upon reconsideration [*id.* at 66–74], Plaintiff requested a hearing before an ALJ [*id.* at 103]. A hearing was held on August 2, 2022, before ALJ Benjamin Burton (hereinafter "ALJ Burton" or "the ALJ") [*Id.* at 33–55]. On September 20, 2022, ALJ Burton found Plaintiff not disabled [*Id.* at 17–28]. Plaintiff asked the Appeals Council to review the ALJ's decision [*Id.* at 203–05].

The Appeals Council denied Plaintiff's request for review [*Id.* at 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on June 23, 2023, seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) [Doc. 1]. The parties have filed opposing briefs, and this matter is now ripe for adjudication [Docs. 11, 12].

## II.     DISABILITY ELIGIBILITY AND ALJ FINDINGS

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be considered disabled:

> [I]f his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

2

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e), 416.920(a)(4), 416.920(e). RFC is the most a claimant can do despite his limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

Here, the ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2017.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of February 1, 2017 through her date last insured of March 31, 2017 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairment: conversion disorder with epileptic-type symptoms (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

3

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: no work around hazards such as unprotected heights, moving mechanical parts, open flames, and large bodies of water.

6. Through the date last insured, the claimant was capable of performing past relevant work as a loan clerk and collections clerk. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from February 1, 2017, the alleged onset date, through March 31, 2017, the date last insured (20 CFR 404.1520(f)).

[Tr. 20–28].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In reviewing the Commissioner's decision, the Court must consider the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence

4

standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not try the case *de novo*, weigh the evidence, or make credibility determinations nor resolve conflicts in the evidence, nor decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

5

## IV. ANALYSIS

Plaintiff raises two issues on appeal: (1) that the RFC was not supported by substantial evidence because the ALJ did not find a single medical opinion persuasive [Doc. 11-1 pp. 7–14]; and (2) that the ALJ did not consider all the vocational expert's ("VE") testimony because the decision failed to address absenteeism [*Id.* at 15–18]. The Commissioner responds that the ALJ properly evaluated the medical opinions on record as well as Plaintiff's subjective complaints in crafting the RFC [Doc. 12 pp. 10–19] and the VE testimony [*Id.* at 20–23]. For the reasons more fully explained below, the Court finds the ALJ's RFC was supported by substantial evidence and he properly considered the VE testimony.

### A. RFC Assessment

Plaintiff argues that the ALJ's RFC assessment was not supported by substantial evidence because the ALJ rejected all medical opinions and incorrectly stated certain facts in considering Dr. Melissa Cooley's ("Dr. Cooley") opinion, rejected and mischaracterized Plaintiff's testimony, and failed to consider the effects of stress and difficulty speaking on Plaintiff's ability to work [Doc. 11-1 pp. 7–14]. The Commissioner responds that the ALJ's RFC was supported by substantial evidence and that he properly evaluated Dr. Cooley's opinion, reasonably rejected Plaintiff's subjective complaints, and properly evaluated the medical evidence [Doc. 12 pp. 10–19].

#### 1. Medical Evidence

The ALJ must "evaluate the persuasiveness of [the] medical opinions and prior administrative medical findings" using five factors, including the (1) supportability and (2) consistency of the opinions or findings, the medical source's (3) relationship with the claimant and (4) specialization, as well as (5) "other factors" such as the "medical source's familiarity with the

6

other evidence in a claim" and their "understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(a), (c). Of these five factors, "[t]he most important . . . are supportability and consistency." *Id.* § 404.1520c(a), (b)(2). "For these two factors, the ALJ is required to 'articulate how [they] considered the medical opinions and prior administrative medical findings' and specifically 'explain how [they] considered the supportability and consistency factors' in 'determin[ing] how persuasive [they] find a medical source's medical opinions or administrative medical findings to be.'" *Sparks v. Kijakazi*, No. 2:21-CV-102, 2022 WL 4546346, at *6 (E.D. Tenn. Sept. 28, 2022) (quoting 20 C.F.R. § 404.1520c(a), (b)(2)).

In this case, the ALJ analyzed Dr. Cooley's treatment records surrounding the relevant period between Plaintiff's alleged disability date and date last insured, as well as the assessment Dr. Cooley completed in 2022. The ALJ noted that Dr. Cooley's records from November 28, 2016, reflect that Plaintiff had seven seizures within the previous three weeks and that she requested her seizure medication be increased [Tr. 23, 443]. At Plaintiff's next visit with Dr. Cooley on March 1, 2017, Plaintiff reported she had not had a seizure in the past two weeks despite being under a lot of stress since quitting her job [*Id.* at 23, 446]. On March 20, 2017, Dr. Cooley's records indicate that Plaintiff requested that her seizure medication be decreased because she had not had a seizure the prior two weeks [*Id.* at 23, 450]. While after the relevant timeframe, the ALJ also noted that Plaintiff saw Dr. Cooley on April 3, 2017, and requested her seizure medication be increased because she had five seizures the week before [*id.* at 23, 453], as well as reports on May 25 [*id.* at 24, 459] and July 24 [*id.* at 24, 463] in which Plaintiff either reported having had only one seizure or no seizures the week before her appointment. Finally, the ALJ discussed the results of the three-day video EEG monitoring conducted on July 31, 2017, at Fort Sanders Medical Center [*Id.* at 24]. The EEG testing concluded that while Plaintiff experienced "three historically

7

stereotypic clinical events . . . there was no well-defined tonic-clonic activity . . . no actual loss of consciousness . . . [and] it was felt that the clinical events were likely not associated with any underlying epileptic syndrome but more likely associated with her behavioral issues with some conversion" [*Id.* (citing Exhs. 2F, 8F)].

In addition, ALJ Burton summarized the assessment Dr. Cooley completed on July 25, 2022:

> [Dr. Cooley] stated that emotional factors contributed to the severity of the claimant's symptoms and functional limitations. Dr. Cooley opined that in a typical workday the claimant would experience pain or other symptoms severe enough to constantly interfere with attention and concentration needed to perform even simple work tasks and that she was incapable of even "low stress" jobs. She asserted that the claimant would likely be absent from work more than four days per month as a result of her impairments or treatment.

[*Id.*]. The ALJ found Dr. Cooley's assessment unpersuasive as her assessment was prepared five years after the relevant period [*Id.* at 25].[1] He also reasoned that "the extreme limitations opined by Dr. Cooley existing prior to March 31, 2017, are not consistent with treatment records, examinations, or imaging studies" [*Id.*]. Finally, the ALJ noted that while Plaintiff experienced epileptic-type symptoms, her symptoms were stabilized with medication and were not so severe as to prevent Plaintiff from performing some work [*Id.*].

The Court finds ALJ Burton sufficiently explained his reasoning for finding Dr. Cooley's opinion unpersuasive. As required by the regulations, ALJ Burton focused on the relevant timeframe between Plaintiff's alleged date of disability and date last insured. *See Lowery v. Comm'r of Soc. Sec.*, 886 F. Supp. 2d 700, 716 (S.D. Ohio 2012). "In determining whether a

---

[1] While Dr. Cooley checked the box on the assessment indicating that Plaintiff experienced these symptoms and limitations prior to December 31, 2017, the ALJ noted that this was marked through and "March 31, 2017 was written in its place with no indication of when this date was changed . . . [and] the initialed change does not appear to ma[t]ch the signature" [Tr. 25].

8

Plaintiff is 'disabled,' the ALJ generally only considers evidence from the alleged disability onset date through the date last insured." *Id.* at 716 n.8 (citing *King v. Sec'y of Health & Human Servs.*, 896 F.2d 204, 205–06 (6th Cir. 1990)). "However, evidence relating back to a claimant's prior condition, even though obtained after the date last insured, may be considered in an ALJ's disability determination." *Id.* (citing *King*, 896 F.2d at 205–06). "An ALJ may properly disregard treatment records and opinions that are not relevant to whether Plaintiff was disabled prior to the date last insured." *Adams v. Comm'r of Soc. Sec.*, No. 4:13-CV-22, 2014 WL 3368692, at *14 (E.D. Tenn. July 9, 2014) (citations omitted). Plaintiff alleged she became disabled on February 1, 2017, and was last insured on March 31, 2017. Hence, the ALJ was only required to consider medical evidence as it relates to this two-month timeframe.

During that two-month period, the record shows Plaintiff's epileptic-like symptoms were controlled with medication. Dr. Cooley's opined limitations in her 2022 Assessment therefore conflict with and are unsupported by her own records from the relevant period, as well as the EEG imaging results. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 442 (6th Cir. 2010) ("As for treating physician Murtaugh's opinion, internal inconsistencies, conflicts with other record evidence, and lack of objective medical data provide substantial evidentiary support for the ALJ's decision not to accord it controlling weight.").

The ALJ also considered the state agency psychological consultants' opinions and found them unpersuasive. ALJ Burton explained that the consultants were "nonexamining sources and their assessments are not consistent with or supported by the longitudinal evidence" [Tr. 25]. He concluded that "[c]onsidering medical findings, conclusions of record, and the claimant's testimony, it is reasonable to conclude that her conversion disorder with epileptic-type symptoms would have restricted her from performing work around hazards" [*Id.* (cleaned up)]. In line with

9

the regulations, the ALJ properly analyzed the state agency consultants' opinion for consistency and supportability.

### 2. Subjective Complaints

At the hearing on August 2, 2022, Plaintiff explained that she stopped working in 2017 but did not apply for benefits until 2021 after having many conversations with her doctor about filing for disability and because she was nervous to apply [Tr. 39–40]. She testified that, in 2017 she would pass out for several hours, be unable to speak, and it would take thirty to forty-five minutes for her to remember who she was or who was around her [*Id.* at 40]. Plaintiff reported that she had three to five seizures a week, even on medication, and that stress triggered or exacerbated the episodes [*Id.* at 40–41]. Around the time she became disabled, Plaintiff states she was able to shop at the grocery store every other day, though not for "big hauls" and completed household chores but had difficulty bending over to clean the bathtub and would have to sit down every ten to fifteen minutes due to pain [*Id.* at 45–46]. She also noted, however, that her children would help her with the household chores, like cleaning the bathtub, washing dishes, and helping her cook [*Id.* at 51]. Additionally, Plaintiff testified that she cared for her children who were then ten and seven years old, including picking them up, helping them to clean their rooms, taking them to and from activities, and attending their sports games [*Id.* at 50–52]. Finally, Plaintiff testified that she had recently vacationed in Mrytle Beach, South Carolina and Destin, Florida [*Id.* at 49–50].

ALJ Burton considered Plaintiff's subjective complaints and testimony. In his decision, the ALJ noted that Plaintiff testified that she had epilepsy, specifically, that she would pass out and then it would take her up to forty-five minutes to recover afterward [*Id.* at 23]. He also included Plaintiff's testimony that her speech was affected, that she had five to eight episodes per week despite her medication adjustment, that stress increased the number of episodes she experienced,

10

and that she was trying to work and care for her children [*Id.*]. The ALJ concluded that Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms, [] are inconsistent because they are not supported by the longitudinal evidence on and prior to her date last insured" [*Id.* at 24–25]. Courts are to "accord great weight and deference to an ALJ's credibility finding, but such a finding must be supported by substantial evidence." *Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). ALJ Burton explained that the record indicated Plaintiff's symptoms were generally controlled with medication and despite Plaintiff's epileptic-type symptoms she was able to care for her children [Tr. 25]. While Plaintiff argues that this is contradicted by the evidence [Doc. 11-1 p. 11], the ALJ supported his decision with portions of the record during the relevant period.[2] ALJ Burton properly considered Plaintiff's ability to perform day-to-day activities as one factor in determining Plaintiff's credibility and discounted the severity of Plaintiff's symptoms as inconsistent with the medical record. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a); *Temples*, 515 Fed. App'x at 462 (citing *Walters*, 127 F.3d at 532).

3. **RFC**

"While an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his or her own lay medical opinion for that of a treating or examining doctor." *Smiley v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 592, 600 (S.D. Ohio 2013) (cleaned up). In *Baker v. Berryhill*, the Court

---

[2] Plaintiff argues that ALJ Burton mischaracterized her testimony because his opinion stated that Plaintiff had vacationed at Universal when she went to Mrytle Beach and stated that she did not explain the delay in applying for disability when she testified that she had prayed a lot about it and was nervous to file [Doc. 11-1 pp. 10–11]. But Plaintiff does not explain how either of these differences has any bearing on the ALJ's decision.

summarized the relevant case law "when there is one medical opinion that is at least partially rejected by the ALJ" as follows:

> Does the ALJ impermissibly "play doctor" when he formulates an RFC that is not supported by the expert medical opinion? Some district courts have held that "the ALJ 'must generally obtain a medical expert opinion' when formulating the RFC unless the 'medical evidence shows relatively little physical impairment' such that the ALJ can permissibly render a commonsense judgment about functional capacity[.]" *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 828 (E.D. Mich. 2017). Some have required an RFC determination to be supported by a medical opinion. *See, e.g.*, *Wyatt v. Comm'r of Soc. Sec.*, No. 12-11406, 2013 WL 4483074, at *16 (E.D. Mich. Aug. 19, 2013) ("ALJ RFC determinations must be supported by medical opinions."). Those cases seem to reflect the consensus that ALJs are not qualified to translate or interpret raw medical data, such as MRIs, or other diagnostic tests, in reaching a RFC assessment.

No. 2:17-CV-175, 2019 WL 1560538, at *3 (E.D. Tenn. Feb. 13, 2019) (alteration in original).

"An ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citation omitted). Ultimately, with respect to an ALJ's failure to base her RFC on a medical opinion, the Sixth Circuit has recently found that "[n]o bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019).

"Although it may be a 'rare case in which the ALJ can formulate a residual functional capacity assessment without relying, at least in part, on an assessment by a medical professional,' . . . this is one of those rare cases." *Bird v. Comm'r of Soc. Sec.*, No. 20-11919, 2021 WL 8014027, at *4 (E.D. Mich. Nov. 30, 2021) (citing *Williams v. Berryhill*, 2019 WL 1274821, at *3 (E.D. Mich. Mar. 20, 2019)), *report and recommendation adopted*, No. 1:20-CV-11919, 2022 WL 851718 (E.D. Mich. Mar. 22, 2022). Here, the ALJ properly analyzed the limited medical evidence

12

on the record as it pertained to the relevant, two-month period in which Plaintiff claims she became disabled and was able to make a "commonsense judgment" about her functional capacity.

Between February 1, 2017, and March 31, 2017, Plaintiff visited Dr. Cooley twice and both times reported she had not had any seizures in the past two weeks [Tr. 446, 450]. Outside this timeframe, Plaintiff once reported she had five seizures in a week and her medication was subsequently increased [*id.* at 453] and by the next two visits, Plaintiff reported having one or no seizures [*id.* at 459, 463]. Further, EEG testing showed "no evidence of any evolving electrographic seizure activity [] nor any evidence of actual loss of consciousness" and therefore, Plaintiff's doctors concluded that her symptoms were associated with behavioral issues with some conversion and not an underlying epileptic syndrome [*Id.* at 24]. Therefore, the ALJ was able to make a commonsense determination about the limited effects Plaintiff's seizure-like symptoms have on her ability to work, considering she did not have any seizures during the relevant timeframe and her symptoms were otherwise controlled with medication. *See Bird*, 2021 WL 8014027, at *4 ("An ALJ should obtain a medical expert opinion when developing the RFC unless the 'medical evidence shows relatively little physical impairment such that the ALJ can permissibly render a commonsense judgment about functional capacity[.]'" (quoting *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 828 (E.D. Mich. 2017))).

Plaintiff is unable to point to any evidence that she requires further limitations than those provided for in the ALJ's RFC beyond Dr. Cooley's assessment completed in 2022, which the ALJ found conflicts with and is unsupported by her own contemporaneous records five years earlier. *See Seeley v. Comm'r of Soc. Sec.*, 600 F. App'x 387, 390 (6th Cir. 2015) ("[Plaintiff] bears the burden of establishing that a disability began before [her] disability insurance expired[.]" (citation omitted)). "The lack of medical opinion evidence here only undermines Plaintiff's

13

application for disability benefits, it does not undermine the ALJ's decision." *Bird*, 2021 WL 8014027, at *5.

Further, Plaintiff contends the ALJ erred in not addressing in the RFC the effect of her stress, inability to speak, and excessive absenteeism on her ability to work [Doc. 11-1 p. 12]. As discussed above, the medical record from the relevant period contradicts these assertions and shows that Plaintiff's seizure-like symptoms were controlled with medication. The medical records from that time also evince that Plaintiff reported her speech issues were linked to her seizures and/or occurred while Dr. Cooley was determining the appropriate dose of Plaintiff's medication [Tr. 443, 446, 450]. "[A]t all times, the ultimate responsibility for fashioning the RFC rests with the ALJ, who has an obligation to determine the RFC based on the evidence that he finds to be well supported and consistent with the record as a whole." *Gregson v. Comm'r of Soc. Sec.*, No. 17-CV-13600, 2019 WL 1253473, at *7 (E.D. Mich. Jan. 2, 2019), *report and recommendation adopted*, No. 17-13600, 2019 WL 762272 (E.D. Mich. Feb. 21, 2019). The ALJ did just that and the regulations do not require more.

B. VE Testimony

Plaintiff argues that the ALJ erred in not considering the entire VE testimony addressing absenteeism in his decision [Doc. 11-1 pp. 15–16]. The Commissioner responds that the ALJ properly evaluated the VE testimony and that there was no evidence showing Plaintiff would miss work for medical reasons [Doc. 12 pp. 20–23].

At the hearing on August 2, 2022, Plaintiff's counsel asked the VE the following hypothetical: "If an individual was likely to miss more than four days of work per month, would there be jobs that they could perform?" [Tr. 54 (cleaned up)]. The VE responded that there would not be jobs available based on her education and experience [*Id.*].

The ALJ was not required to address the VE's testimony that there would not be jobs available were Plaintiff to miss four days of work per month or more. Dr. Cooley stated this proposed limitation in her 2022 Assessment which the ALJ rejected because it was completed five years after Plaintiff's alleged date of disability and date last insured and was not supported by the record. There is no other evidence on the record showing that Plaintiff would require "medical absences" from work. *Cf. Hartman v. Coleman*, 954 F. Supp. 2d 618, 645–46 (W.D. Ky. 2013) (reversing ALJ decision because evidence showed the plaintiff regularly visited the emergency room or otherwise required intensive treatment). Therefore, the ALJ was not under any obligation to adopt this limitation. *Gregson*, 2019 WL 1253473, at *7.

## V. CONCLUSION

For the reasons explained, the Court will **DENY** Plaintiff's motion [Doc. 11] and will **AFFIRM** the decision of the Commissioner.

ORDER ACCORDINGLY.

ENTER:

*/s/ Jill E. McCook*
Jill E. McCook
United States Magistrate Judge